UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY DEVITIS,

    Plaintiff,                      Civil Action No. 11-10188

      v.                          District Judge PATRICK J. DUGGAN
                                   Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                /

## REPORT AND RECOMMENDATION

Plaintiff Perry Devitis brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [DE #12] be DENIED, and that Plaintiff's Motion for Summary Judgment [DE #10] be GRANTED to the extent that the case be remanded pursuant to the fourth sentence of 42 U.S.C. 405(g) for additional proceedings consistent with this Recommendation.

## PROCEDURAL HISTORY

On June 28, 2007, Plaintiff applied for DIB , alleging disability as of September 14, 2005 (Tr. 100-101). Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on October 16, 2008 in Detroit, Michigan (Tr. 31). Patricia S. McKay, Administrative Law Judge ("ALJ") presided. Plaintiff, represented by attorney Robert Blamer, testified (Tr. 36-66), as did Plaintiff's wife, Vicky Devitis (Tr. 66-73), and Vocational Expert ("VE") Michael Rosco (Tr. 74-80). On January 28, 2009, ALJ McKay found Plaintiff not disabled (Tr. 20). On July 20, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on January 14, 2011.

## BACKGROUND FACTS

Plaintiff, born December 23, 1957, was 51 when ALJ McKay issued her decision (Tr. 20, 100). He completed 12th grade and worked previously as a "bartender/manager" and janitor (Tr. 106, 111). His application for benefits alleges disability as a result of diabetes, colitis, neuropathy, broken bones, and arthritis (Tr. 105).

### A.    Plaintiff's Testimony

Plaintiff testified by stating that he currently lived in a single family home with his wife and teenaged children (Tr. 37). In addition to a high school education, Plaintiff stated that he received some training in hotel and restaurant management but did not finish the program (Tr. 38). He indicated that his former work as a bartender required him to mix drinks, use a computer, prepare food, restock supplies, and perform cleanup tasks (Tr. 39-42). He stated that subsequently, he worked as a school janitor but that hand and foot problems

forced him to quit work (Tr. 43). He stated that since losing the janitorial position, his work activity had been limited to a two-month stint cleaning for a veterinarian clinic (Tr. 44).

Plaintiff testified that he limited his driving to short distances due to his inability to sit for long periods (Tr. 45). He stated that on an average day, he arose at 6:15 a.m., prepared breakfast for his son, stretched, watched television, and shopped for groceries (Tr. 47). He admitted that he was independent in self care activities but that he required help getting out of a bathtub and putting on his right sock (Tr. 47, 56). He stated that hand problems created problems tying his shoes or performing other activities requiring fine manipulative functions (Tr. 56-58). He alleged that hand tremors prevented him from picking up more than a gallon of milk (Tr. 48). He admitted that he continued to cut the lawn (Tr. 49). He denied church or club attendance (Tr. 48). He denied being able to type, due to hand problems (Tr. 50). He stated that his hand tremors were worse some days than others (Tr. 59).

Plaintiff alleged that foot and leg pain prevented him from being on his feet for extended periods, adding that he experienced hand swelling and numbness (Tr. 51). He indicated that arthritis in his legs and toes prevented him from standing for long periods (Tr. 52). He denied that he had a drinking problem, noting that his alcohol intake was limited to two glasses of wine each day (Tr. 52). He stated that he experienced frequent chest infections (Tr. 54). Plaintiff noted that he took insulin by injection twice a day (Tr. 57). He also reported that since falling out of a tree at age 12, he had undergone several hip operations and that he wore a lift in his right shoe (Tr. 62). He stated that he was unable to walk more than three or four blocks (Tr. 63). He opined that his drinking did not adversely

affect symptoms of diabetes but acknowledged that his treating sources had told him to abstain from alcohol (Tr. 63, 65-66).

### B. Testimony of Vicky Devitis

Mrs. Devitis testified she had been married to Plaintiff for 17 years (Tr. 67). She stated that at times when Plaintiff experienced hand shaking, she helped him thread his belt through his belt loops and tie his shoes (Tr. 67-68). She reported that Plaintiff cooked for the family during the week, but that she took the garbage to the curb and dusted (Tr. 69). She concurred with Plaintiff's testimony that he did not use the computer (Tr. 71). She stated that Plaintiff drank "a couple of glasses of wine per evening," later acknowledging that he drank "maybe more than two" (Tr. 72).

### C. Medical Evidence

#### 1. Treating Sources

In November, 2002, a CT of the abdomen found degenerative changes of the spine and asymmetry of the chest wall muscles, but was otherwise unremarkable (Tr. 148). An MRI found atrophy of the right abdomen and hip muscles (Tr. 153). In January, 2003, imaging studies showed degenerative changes in the lumbar and thoracic spine as well as ankylosis at the right hip joint (Tr. 151). An August, 2003 MRI revealed multiple herniations of the thoracic spine impacting the spinal chord (Tr. 152). In February, 2004, Plaintiff sustained a mild stroke creating numbness of the right hand and foot (Tr. 158-159, 168-169). A July, 2004 imaging study of the lumbar spine showed "minimal lumbar spurring" (Tr. 199). A June, 2005 ultrasound of the abdomen was unremarkable (Tr. 214).

A CT of the brain was also unremarkable (Tr. 215). A CT of the abdomen showed asymmetry of the pelvic muscles but otherwise showed minimal abnormalities (Tr. 217). An EKG was normal (Tr. 219).

In November, 2005, Plaintiff sought emergency treatment for abdominal pain (Tr. 226). Treating staff noted that he admitting to drinking "excessive amounts of alcohol" for the past several days (Tr. 227). He was diagnosed with diabetes mellitus and alcohol abuse (Tr. 226). He was discharged five days later with directions to avoid alcohol (Tr. 228). His diagnosis was deemed "poor" as a result of his "continued history of alcohol abuse in the past, present, and probable future" (Tr. 228). The following month, Joseph G. D'Avanzo, D.O., noting that abdominal symptoms had subsided, directed Plaintiff to "discontinue alcohol" (Tr. 229, 333).

In January, 2007, Plaintiff underwent surgery for the treatment of prostate cancer (Tr. 282). March, 2007 CT and MRI studies showed no evidence of metastatic disease (Tr. 288-289, 312). In May, 2007, endocrinologist George J. Leach, D.O. told Plaintiff's counsel that a recent nerve conduction study of the extremities showed mild neuropathy (Tr. 328). He noted that Plaintiff reported foot and right hand pain as well as difficulty "holding tools for a prolonged period of time" (Tr. 328). August, 2007 treating notes indicate no recurrence of a malignancy (Tr. 307). Treating notes from January, 2008 show that Plaintiff was "doing well" one year after prostate surgery (Tr. 304). In March, 2008, Dr. Leach noted Plaintiff's history of "significant diabetic peripheral neuropathy" (Tr. 327). In May, 2008, Plaintiff was again advised to discontinue alcohol (Tr. 330).

In September, 2008, treating physician Troy M. Smith, D.O, noted that Plaintiff experienced the conditions of diabetes, hypertension, hypothyroidism, hyperlipidemia, gastro esophageal reflux disease, allergies, degenerative disc disease, and chronic alcohol abuse (Tr. 342). He deemed Plaintiff's prognosis "guarded" (Tr. 342). He opined that Plaintiff would experience difficulty performing any work (Tr. 343).

### 2. Non-Treating Sources

In August, 2006, Leonidas Rojas, M.D. performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 270). Dr. Rojas noted that Plaintiff fractured his right hip when he was 12, resulting in current "aches and pains" (Tr. 269). Plaintiff's right leg was one and a half inches shorter than the left; a condition for which he wore a right shoe lift (Tr. 268-269). Plaintiff demonstrated the ability to perform fine and gross manipulation (Tr. 270). He walked with a "mild" limp on the right (Tr. 270). Dr. Rojas observed normal muscle tone and no tremors or muscle atrophy (Tr. 270).

The same month, Jack Kaufman, M.D. completed a non-examining Residual Functional Capacity Assessment on behalf of the SSA (Tr. 271-278). Dr. Kaufman found that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 272). Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 273). The Assessment found the absence of manipulative, visual, communicative, or environment impairment (Tr. 274-275).

### D. Vocational Expert Testimony

VE Michael Rosco classified Plaintiff's past work as a custodian as unskilled and exertionally medium (as performed) and bartender, semiskilled/medium (as performed)[1] (Tr.75). He testified that the bartending skills could be transferred to the exertionally light jobs of cashier and customer service (Tr. 75). ALJ McKay then posed the following question to the VE:

> Let's assume we have a hypothetical claimant with our claimant's age, education, and past work experience, and that the residual functional capacity to perform the full range of medium exertional work with the following additional restrictions, occasional climbing, crouching, crawling, kneeling, balancing, stooping, and bending . . . .?

(Tr. 76). The VE replied that the above limitations would preclude Plaintiff's work as a janitor but allow the work of a bartender (Tr. 76). He testified further that if the same individual required a "sit/stand at will" limitation, the job of bartender would be unavailable but that the individual could perform the jobs of assembler, packer, sorter, and visual inspector, finding 5,000 medium jobs, 6,000 light, and 7,000 sedentary in the regional economy (Tr. 76-77).

The VE testified further that if the same individual were restricted to frequent (as

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

opposed to *constant* ) use of the hands for gross manipulation, all of the above jobs would be unavailable, but that Plaintiff could perform the unskilled, sedentary work of a unarmed security guard (Tr. 77-78). He stated that if Plaintiff's testimony were fully credited, he would be unable to perform any work based on his inability to stand or walk for long periods and hand limitations (Tr. 78-79).

The VE stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except with respect to the sit/stand option and findings regarding the skill level of the security guard position which he stated was based on professional experience (Tr. 79).

### E.     The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found the severe impairments of "diabetes mellitus with peripheral neuropathy, degenerative disc and joint disease in the lumbar spine, and status post carcinoma of the prostate and fusion of the the right hip " but that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 19-20). ALJ McKay found that while Plaintiff was unable to perform any of his past relevant work, he retained the following residual functional capacity ("RFC"):

> "[T]o perform light exertional work with a sit/stand option and just occasional climbing, crouching, crawling, kneeling, balancing, stooping, and bending"

(Tr. 20). Citing the VE's testimony, the ALJ found that Plaintiff could perform the jobs of assembler, inspector, sorting, and packager (Tr. 22).

The ALJ discounted the credibility of Plaintiff's claims, finding that his allegations

of shortness of breath and neuropathy of the hands and feet were "exaggerated in view of the rather mild evidence" (Tr. 21). She noted that Plaintiff had been noncompliant with his physician's advice to quit drinking (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Treating Physician Analysis

Plaintiff argues first that the ALJ failed to "give adequate weight" to the treating source findings of Dr. Leach, an endocrinologist, and Dr. Smith, a family physician. *Plaintiff's Brief* at 3-4.  On a related note, Plaintiff contends that the ALJ misinterpreted objective studies showing "mild" neuropathy, arguing that mild neuropathy does not equate with a "mild" work related impairment.  *Id.*

If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record, it must be given controlling weight." *See Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted) (citing *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2). In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment [,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

    Plaintiff does not argue that the ALJ ignored Dr. Smith's April, 2008 disability opinion or failed to abide by the procedural requirements of a treating physician analysis. Rather, he contends that because Dr. Smith's opinion was well supported by objective studies, it ought to have been adopted. *Plaintiff's Brief* at 3-4. In rejecting Dr. Smith's opinion, the ALJ correctly noted that the condition of gastro esophageal reflux disease (cited by Dr. Smith) had mostly resolved (Tr. 21). Likewise, she observed that Plaintiff had made a full recovery after undergoing surgery for prostrate cancer, reasonably finding that the condition would not limit his work abilities (Tr. 21).

    However, the ALJ's conclusion that imaging studies mentioned by Dr. Smith "did not identify a debilitating degree of arthritis" erroneously cites studies of the *lumbar* spine from late 2006 through the early months of 2007 rather than the earlier *thoracic* spine studies to

-11-

which Dr. Smith referred (Tr. 21, 342). Consistent with Dr. Smith's opinion, earlier MRI's of the thoracic spine showed multiple herniations of the thoracic spine impacting the spinal chord (Tr. 152). While these studies predate Plaintiff's alleged onset of disability, they support Dr. Smith's statement that Plaintiff experienced significant ongoing degenerative spinal problems (Tr. 342). Thus, the ALJ's rejection of Dr. Smith's opinion on this point stands at odds with the medical evidence. Given that the administrative opinion omits all mention of the earlier MRIs showing significant thoracic problems, the ALJ's erroneous interpretation of Dr. Smith's letter is of particular concern.

Further, while the ALJ cited Dr. Leach's 2007 nerve conduction studies showing "mild" peripheral sensory polyneuropathy (Tr. 21, 328), Plaintiff is correct that "mild" neuropathy does not necessarily equate to "mild" symptoms or "mild" work related limitations. Dr. Leach's later, 2008, statement that Plaintiff experiences "significant" neuropathy suggests that the condition created some level of limitation (Tr. 327). Notwithstanding a consultive examiner's 2006 finding that Plaintiff demonstrated the ability to perform fine and gross manipulation (Tr. 270), later studies correlate with complaints of hand pain, clumsiness, and numbness (Tr. 328). Given that the RFC found in the administrative opinion does not contain *any* manipulative limitations, clarification on this point is also required.

### B. The Credibility Determination

Plaintiff argues that the ALJ's credibility determination was inadequate. *Plaintiff's Brief* at 4-5. Specifically, he contends that the fact that he continued to drink against medical

advice does not support the finding that he exaggerated his functional limitations. *Id.* Once again, he submits that the nerve conduction findings of "mild" neuropathy do not contradict his testimony regarding manipulative limitations. *Id.*

"[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(citing *Walters v. Commissioner of Social Sec.*, 127 F. 3d 525, 531 (6th Cir. 1997)). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters*, at 531. *See also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir.1989) (*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

Notwithstanding the deference generally accorded the administrative credibility determination, I find that here too, the ALJ's findings are not adequately supported. Her discussion of Dr. Smith's opinion, as noted above, suggests that she overlooked compelling evidence of long term spinal problems (Tr. 21). Second, while I agree that Plaintiff's continued drinking is problematic and could be used to support the inference that he was not well motivated to find work, the ALJ has not made a correlation between his continued alcohol use and his medical problems. While his continued "social" drinking against medical

advice is regrettable, treating records postdating his November, 2005 hospitalization show that his blood sugar levels remained fairly stable. Third, the ALJ's rejection of Plaintiff's claims on the basis that he "took care of his autistic son" (Tr. 21) is undermined by Plaintiff's testimony that the son "pretty much takes care of himself" and his wife's testimony that the boy was able to care for his personal needs and was generally "high function[ing]" (Tr. 71).

Because Plaintiff has shown a strong but not "overwhelming" case for disability, the errors discussed herein, the undersigned recommends a remand for further administrative proceedings rather than an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994). However, a finding that Plaintiff (over 50 at the time of the ALJ's decision) experienced even some degree of manipulative limitation would mandate a finding of disability[2] (Tr. 77); 20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.14. As such, a remand on the basis of the above discussed errors is particularly warranted for careful reconsideration of Plaintiff's claim.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment

---

[2] The VE found that if the hypothetical limitations (forming the basis of the RFC) were amended to restrict Plaintiff to frequent use of his hands, he would be limited to sedentary work (Tr. 77). Pursuant to 20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.14, a person "restricted to sedentary work who is age fifty to fifty-four, and whose education does not permit direct entry into skilled work, must be found disabled unless he has acquired transferable skills as a result of his past work." *Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 776 (6th Cir.1987).

[DE #12] be DENIED, and that Plaintiff's Motion for Summary Judgment [DE #10] be GRANTED, and that the case be remanded pursuant to the fourth sentence of 42 U.S.C. 405(g) for additional administrative proceedings consistent with this Recommendation

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: February 21, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 21, 2012.

                                              s/Johnetta M. Curry-Williams
                                              Case Manager